COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Senior Judge Hodges
Argued at Richmond, Virginia


EDWARD A. VASAIO
                                                    OPINION BY
v.        Record No. 0707-03-2              JUDGE LARRY G. ELDER
                                                  JANUARY 13, 2004
DEPARTMENT OF MOTOR VEHICLES,
 COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                       Randall G. Johnson, Judge

            Sherry Netherland (Michael Morchower; Morchower, Luxton &
            Whaley, on brief), for appellant.

            Eric K. G. Fiske, Senior Assistant Attorney General (Jerry W.
            Kilgore, Attorney General, on brief), for appellee.


        Edward Vasaio (appellant) appeals from an order of the Circuit Court for the City of

Richmond affirming the determination of a hearing officer of the Department of Motor Vehicles

(DMV) in a proceeding conducted pursuant to the Administrative Process Act.  DMV issued an

order of suspension indicating that appellant's privilege to drive and register motor vehicles in

the Commonwealth would be suspended unless appellant either (1) furnished proof that he had

insurance covering his motorcycle on the date he registered it and represented that he had

insurance or (2) paid a $500 statutory fee and filed during three successive years a particular

form certifying that he had insurance on that vehicle.  A DMV hearing officer and the circuit

court affirmed the suspension.

        On appeal, appellant contends the evidence failed to support a finding that he violated

Code §§ 46.2-706 and -707 because it did not establish (1) that the motorcycle he erroneously

certified was insured was a motor vehicle within the meaning of those statutes and (2) that he

lacked good cause to believe the motorcycle was insured when he registered it. We hold appellant's motorcycle was a motor vehicle as defined in Code § 46.2-705, thus triggering the provisions of Code § 46.2-706. We also hold substantial evidence supported the hearing officer's finding that he lacked good cause to believe the motorcycle was insured when he registered it. Thus, we affirm the circuit court's order affirming the hearing officer's decision to reinstate the order of suspension.

I.

BACKGROUND

On May 31, 2001, appellant registered a 1973 Honda motorcycle with DMV. On the registration form, appellant checked the box indicating the motorcycle was insured.

DMV then "required [appellant] to provide the name of [his] liability insurance company and policy number to confirm with the insurance company that [his] vehicle was insured on the date of registration." Appellant advised DMV that the motorcycle was insured by Progressive Casualty Insurance Company under a particular policy number, but Progressive denied providing liability insurance for appellant's motorcycle on May 31, 2001, the date he registered the motorcycle.

On April 5, 2002, DMV notified appellant that, on the date of registration, the motorcycle was not insured by the company appellant had listed. It notified appellant that his "privilege to drive, to register motor vehicles, to obtain license plates and decals [would] be suspended effective May 5, 2002" unless he either (1) furnished proof that he had insurance covering his motorcycle on the date he registered it and represented that he had insurance or (2) paid a $500 statutory fee and filed during three successive years form SR-22 certifying that he had insurance on that vehicle. Appellant again furnished the name of Progressive Insurance, and he requested a hearing to show why the order of suspension should not be enforced.

On August 28, 2002, before a DMV hearing officer, appellant testified that, when he completed the DMV registration form for the motorcycle, he believed his vehicle insurance policy with Royal Insurance Company of America automatically provided coverage for his motorcycle for a period of up to thirty days from the date of registration. He testified he had purchased other automobiles in the past that had been insured automatically. He had not previously owned a motorcycle and did not confirm with his insurance company prior to registering the motorcycle with DMV that the motorcycle would be covered by his existing policy.

Appellant stored the motorcycle in a self-storage unit with the gas tank removed and wrapped in bubble wrap. Appellant furnished a notarized statement from a Bradley D. Wein, who attested that he helped appellant put the motorcycle in the storage unit in May 2001, that its gas tank had been removed and wrapped in bubble wrap, and that it remained in that condition until appellant sold it in October 2001.

On or about September 5, 2001, appellant spoke with his insurance agent and learned the motorcycle could not be covered by the Royal Insurance policy covering his other vehicles. On that date, appellant obtained insurance coverage on the motorcycle through Progressive Insurance. On October 2, 2001, he sold the motorcycle.

Although appellant said he intended to keep the motorcycle insured, he took no steps to contact his insurance company during what he believed was a thirty-day grace period because the motorcycle was in the storage unit and he believed the motorcycle was inoperable.

By decision dated September 16, 2002, the DMV hearing officer upheld the suspension. He made findings of fact in keeping with the above and reasoned as follows:

> 1. Your vehicle's being inoperable at the time that you registered it and its not being driven, are not bases to cancel the Order of Suspension issued to you on April 5, 2002.

2. . . . . Your assumption that your existing automobile liability insurance policy would insure the [motorcycle] and that insurance coverage would be in force on the [motorcycle] when you registered it, without first determining the existence of such insurance, does not constitute good cause for you to have believed that your [motorcycle] was an insured motor vehicle on May 31, 2001.

Appellant appealed to the circuit court. Following the parties' oral argument and submission of written memoranda, the court "[found] . . . no error in the agency record"; concluded "substantial evidence" supported the hearing officer's decision; and held "DMV's actions were governed by the requirements of § 46.2-706."

Appellant noted an appeal to this Court.

II.

ANALYSIS

On appeal of an agency decision pursuant to the Administrative Process Act, "the sole determination as to factual issues is whether substantial evidence exists in the agency record to support the agency's decision. The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind necessarily would come to a different conclusion." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988). In making this determination, "the reviewing court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Id.

On appeal of an agency's determination on issues of law,

> where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts[, and] . . . "'judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of delegated discretion.'"

- 4 -

Id. at 244, 369 S.E.2d at 8 (quoting Va. Alcoholic Beverage Control Comm'n v. York St. Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979) (quoting Schmidt v. Bd. of Adjustment, 88 A.2d 607, 615-16 (N.J. 1952))).

Pursuant to Code § 46.2-600, "except as otherwise provided in this chapter," which covers the "[t]itling and [r]egistration of [m]otor [v]ehicles," "every person who owns a motor vehicle . . . shall, before it is operated on any highway in the Commonwealth, register with the [DMV] and obtain from the [DMV] the registration card and certificate of title for the vehicle." "Motor vehicle," as used in that code section, "means every vehicle as [that term is defined in Code § 46.2-100] that is self-propelled or designed for self-propulsion except as otherwise provided in this title." Code § 46.2-100.

Code § 46.2-706 contains certain additional requirements for individuals seeking to register vehicles:

> In addition to any other fees prescribed by law, every person registering an uninsured motor vehicle as defined in § 46.2-705, at the time of registering or reregistering the uninsured vehicle, shall pay a fee of $500 . . . .
>
> \*   \*   \*   \*   \*   \*   \*
>
> Every person applying for registration of a motor vehicle and declaring it to be an insured motor vehicle shall, under the penalties set forth in § 46.2-707,[1] execute and furnish to the Commissioner his certificate that the motor vehicle is an insured motor vehicle as defined in § 46.2-705 . . . . The Commissioner . . . may verify that the motor vehicle is properly insured . . . . If no record of liability insurance is found, the [DMV] may require the motor vehicle owner to verify insurance in a method prescribed by the Commissioner.
>
> The refusal or neglect of any owner within thirty days to submit the liability insurance information when required by the Commissioner . . . shall require the Commissioner to suspend any

---

[1] We do not discuss Code § 46.2-707 in any detail because none of the penalties available under that code section are at issue here. The only sanction before us in this appeal is the suspension order issued under Code § 46.2-706.

driver's license and all registration certificates and license plates issued to the owner of the motor vehicle until the person (i) has paid to the Commissioner a fee of $500 . . . and (ii) furnishes proof of financial responsibility for the future in the manner prescribed [elsewhere in] this title. . . .

(Footnote added).

A.

DEFINITION OF "MOTOR VEHICLE" FOR PURPOSES OF REGISTRATION

Appellant contends the motorcycle was not a motor vehicle as defined in Code § 46.2-705 and, thus, that his erroneous certification that the motorcycle was insured did not support the suspension order entered pursuant to Code § 46.2-706. Because this issue turns on the meaning of the term "motor vehicle" as used in Code §§ 46.2-705 and -706, "the question involves an interpretation which is within the specialized competence of the agency[;] . . . the agency's decision is entitled to special weight in the courts[, and] . . . '"judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of delegated discretion."'" Kenley, 6 Va. App. at 244, 369 S.E.2d at 8 (quoting York St. Inn, 220 Va. at 315, 257 S.E.2d at 855 (quoting Schmidt, 88 A.2d at 615-16)). We hold the DMV hearing officer did not abuse his discretion in concluding that appellant's motorcycle was a motor vehicle within the meaning of Code §§ 46.2-705 and -706.

Appellant points to Code § 46.2-705, which provides that "[f]or the purposes of this article," titled Registration of Uninsured Motor Vehicles, see Code §§ 46.2-705 to -710, a motor vehicle is "a vehicle capable of self-propulsion." Appellant contrasts this definition with the one contained in Code § 46.2-100, which classifies as a motor vehicle "every vehicle as defined in this section that is self-propelled or *designed for self-propulsion* except as otherwise provided in this title." (Emphasis added). He contends that because the Code § 46.2-705 definition does not

include the phrase, "designed for self-propulsion," only vehicles that are currently capable of self-propulsion--i.e., presently operable--are covered.

"The principles of statutory construction require us to ascertain and give effect to the legislative intent. The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results." Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424-25 (1992) (citations omitted). "Statutes addressing the same subject are to be read *in pari materia*[, that is, they should be] 'read, construed and applied together so that the legislature's intention can be gathered from the whole of the enactments.'" Alger v. Commonwealth, 19 Va. App. 252, 256, 450 S.E.2d 765, 767 (1994) (quoting Black's Law Dictionary 791 (6th ed. 1990)).

We hold that appellant's proposed interpretation of the statute would lead to absurd results. Although Code § 46.2-705 contains the definition of "motor vehicle" that appellant quotes, its definition is more detailed. The complete definition is as follows:

> "Motor vehicle" means a vehicle capable of self-propulsion which is either (i) required to be titled and licensed and for which a license fee is required to be paid by its owner, or (ii) owned by or assigned to a motor vehicle manufacturer, distributor, or dealer licensed in the Commonwealth.

Code § 46.2-705.

We conclude that when the legislature, after defining "motor vehicle" in Code § 46.2-100 in general terms, defined the term again in Code § 46.2-705, it did not change the basic underlying definition of what constitutes a motor vehicle. Rather, it *added* the requirement that, for purposes of registration of uninsured motor vehicles, a motor vehicle is one "which is either (i) required to be titled and licensed and for which a license fee is required to be paid by its owner, or (ii) owned by or assigned to a motor vehicle manufacturer, distributor, or dealer licensed in the Commonwealth." We hold that, by using the phrase "vehicle capable of

- 7 -

self-propulsion" rather than "vehicle . . . that is self-propelled or designed for self-propulsion," the legislature did not intend to exclude vehicles lacking an actual present ability of self-propulsion. If the legislature had wished to exclude vehicles designed for self-propulsion that were presently inoperable, it could have done so, just as it did in Code § 46.2-1200, in which it defined the term "abandoned inoperable motor vehicle" to mean, *inter alia*, one "whose fair market value, as determined by the locality's official responsible for assessing motor vehicles under § 58.1-3503, is less than the cost of its restoration to an operable condition."

We also hold it is inherent in the act of registering a motor vehicle pursuant to Code § 46.2-600 that the owner intends to operate that motor vehicle, as defined in Code § 46.2-100, on the highways of the Commonwealth or at least that he intends to meet all legal requirements necessary to permit him to do so at some future time. When an owner registers his vehicle and declares pursuant to Code § 46.2-706 that it is insured, DMV is entitled to assume the owner concedes that the thing registered is, in fact, a motor vehicle, as defined in Code § 46.2-705.[2]

The legislature could not have intended to excuse a false declaration of insurance on the registration form simply because the vehicle being registered was temporarily inoperable or was not "required to be titled and licensed" on the date of registration. To hold otherwise would present significant enforcement problems for DMV and law enforcement personnel.

The first problem stems from the fact that, along with the act of registering a vehicle with DMV comes the ability to obtain license plates and decals, the outward indicia of authority to operate a vehicle on the highways of the Commonwealth. See Code §§ 46.2-711, -712. If the statute were construed to permit registration of temporarily inoperable vehicles without proof of

---

[2] At oral argument before this Court, appellant asserted his motorcycle was not a motor vehicle under Code § 46.2-705 because it did not meet the criteria of another part of that section's definition--it was not "required to be titled and licensed." Assuming without deciding this issue is properly before us in this appeal, we hold that it lacks merit for the reasons set out in the text.

insurance or payment of the uninsured motor vehicle fee, registrants could avoid the requirements of Code § 46.2-706 by intentionally rendering the vehicle inoperable on the day of registration so as to avoid any possible future penalty for erroneously declaring the vehicle insured rather than paying the $500 uninsured motor vehicle fee. Despite a lack of insurance or payment of the uninsured motor vehicle fee, such registrants nevertheless would be able to obtain license plates and decals for their noncompliant vehicles. As a result, law enforcement personnel would face greater difficulty in determining, by visual inspection alone, which vehicles in operation on Virginia's highways were in violation of insurance certification requirements.

Second, even when DMV records revealed discrepancies between owners' certifications of insurance and liability insurers' records of coverage, every person unable to furnish satisfactory proof of insurance and against whom a suspension order subsequently was issued could claim the vehicle was inoperable on the date of registration. Each such claim would necessitate a fact-finding hearing to determine whether the representations were true, thereby excusing the registrant from any penalty for his erroneous representation. These are absurd results that cannot have been intended by the legislature.

Thus, we hold the circuit court properly upheld the hearing officer's determination that appellant's motorcycle was a motor vehicle as defined in Code § 46.2-705.

B.

BASIS FOR BELIEF IN EXISTENCE OF INSURANCE COVERAGE

Appellant contends that even if the motorcycle was a motor vehicle as defined in Code § 46.2-705, he had good cause to believe it was insured when he registered it and that the DMV hearing officer's conclusion to the contrary was not supported by substantial evidence. The DMV hearing officer accepted as credible appellant's testimony that appellant *believed* the

vehicle was covered by insurance. However, the hearing officer concluded appellant lacked good cause for such belief because he failed to confirm the existence of insurance coverage. We hold substantial evidence supported the hearing officer's finding, and we affirm the circuit court's order on this issue, as well.

The Commonwealth has a "substantial interest in protecting its motorists, passengers and pedestrians from unsafe drivers and vehicles . . . [by] ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation and hence that licensing, registration and vehicle inspection requirements are being observed." 2B Michie's Jurisprudence, Automobiles § 4, at 10 (2002). Although Virginia does not mandate that vehicles registered in Virginia be covered by liability insurance, it does require owners registering uninsured vehicles to pay a fee. Code § 46.2-706. This fee supports a fund that is distributed among insurance companies providing automobile insurance in the Commonwealth. Code §§ 38.2-3000, -3001; Code § 46.2-710. The fund helps protect the general public "by reducing the overall cost of uninsured motorist insurance coverage" required to be included with every automobile liability insurance policy issued in the Commonwealth. Code §§ 38.2-2206, -3001; Williams v. Motley, 925 F.2d 741, 743-44 (4th Cir. 1991) (interpreting Virginia law in federal bankruptcy context).

The interpretation of Code § 46.2-706 appellant advances would excuse from the suspension requirements a driver who registers his vehicle believing in good faith that he is insured but who has not taken prudent steps to confirm the fact of coverage. Such an interpretation would encourage undesirable growth in the number of motor vehicles driven with neither insurance coverage nor payment of the uninsured motor vehicle fee. This, in turn, would inhibit the effectiveness of the statutory scheme in its effort to reduce the cost of uninsured motorist coverage. In light of this result, we hold substantial evidence supported the hearing

officer's conclusion that appellant failed to show good cause why the suspension order should not be enforced.

III.

We hold appellant's motorcycle was a motor vehicle as defined in Code § 46.2-705 and, thus, was governed by Code § 46.2-706. We also hold that substantial evidence supported the hearing officer's finding that appellant lacked good cause to believe the motorcycle was insured when he registered it. Thus, we affirm the circuit court's order affirming the DMV hearing officer's decision to reinstate the order of suspension.

<u>Affirmed.</u>