## CIRCUIT COURT OF FAIRFAX COUNTY

Jennings Motor Co., Inc.,
d/b/a Springfield Toyota, Inc.

v.

Toyota Motor Sales, USA, Inc.,
and Richard D. Holcomb,
Commissioner,
Virginia Dept. of Motor Vehicles

August 26, 2010

Case No. CL-2011-5818

BY JUDGE JAN L. BRODIE

This matter came before the Court on August 5, 2011, upon Jennings Motor Company, Inc., d/b/a Springfield Toyota's ("Springfield Toyota") Petition for Appeal from the February 28, 2011, final agency decision of the Virginia Department of Motor Vehicles ("DMV). The Commissioner of the DMV, Richard D. Holcomb, as well as Toyota Motor Sales USA, Inc. ("TMS"), are respondents in this matter. The parties submitted briefs, and, on August 5, 2011, the Court heard arguments of counsel on the issues presented in the Petition for Appeal concerning the burden of proof, statutory interpretation, and the sufficiency of the evidence presented in the underlying agency proceedings. Following the hearing, the Court took the matter under advisement. After reviewing the evidence and considering the arguments of counsel, the Court reaches the following findings and conclusion.

*Background*

This matter involves two Toyota franchise motor vehicle dealers in Northern Virginia. Springfield Toyota and Bill Page Toyota ("Page Toyota"),

who is not a party to this matter, are motor vehicle dealers with their principal places of business in Fairfax, Virginia. TMS is a Toyota vehicle manufacturer/distributor. Springfield Toyota has a Franchise Agreement with TMS, which allows it to sell and service new and certified used Toyota vehicles. Page Toyota has a similar agreement with Central Atlantic Toyota Distributors ("CAT"), a division of TMS.

In early 2008, TMS notified Springfield Toyota of its intention to permit Page Toyota to operate an offsite Toyota Certified Service Center ("TCSC") in addition to its existing dealership. This new TCSC was within the Relative Market Area ("RMA") of Springfield Toyota, and, on July 15, 2008, Springfield Toyota requested an administrative hearing under Va. Code §§ 46.2-1569(4) and 46.2-1573 challenging TMS's approval of the TCSC. In this request, Springfield Toyota sought a determination as to whether the RMA would support all of the dealers of the Toyota line-make in the RMA following the establishment of the TCSC franchise.

DMV granted a formal evidentiary hearing, which took place from September 14 through September 17, 2009. The Hearing Officer issued a Recommended Decision on January 7, 2010, recommending that the TCSC franchise be approved. Springfield Toyota filed exceptions, and TMS filed a response to those exceptions.

The DMV Commissioner ("the Commissioner") reviewed the Hearing Officer's recommendations and the parties' exceptions and issued a decision on May 27, 2010. The Commissioner found that the Hearing Officer had arrived at his conclusions using the wrong RMA. Consequently, the Commissioner remanded the matter back to the Hearing Officer to reconsider his recommendations using the correct RMA.

After additional briefing by the parties, the Hearing Officer issued a new decision on June 25, 2010, in which he again recommended that the TCSC franchise be approved. The Commissioner reviewed the entire factual record and the new recommended decision and issued a final hearing decision on February 28, 2011. The Commissioner found that, based on the controlling statutes and the evidence presented, TMS had met its burden to show that the RMA would support all of the dealers in the Toyota line-make in the RMA following the establishment of the TCSC franchise.

On April 20, 2011, pursuant to the Administrative Process Act, Va. Code §§ 2.2-400 through 2.2-4031, and Supreme Court of Virginia Rule 2A:4, Springfield Toyota filed a Petition for Appeal from DMV's final decision.

## Standard of Review

The Supreme Court of Virginia has held that "it is well established that agency action is presumed valid on review and the burden 'rests upon the party complaining' to overcome this presumption." *EDF v. State Water*

*Control Bd.*, 15 Va. App. 271, 277, 422 S.E.2d 608, 611 (1992). With respect to the agency's findings of fact, the Court must accept the agency's findings of fact unless "a reasonable mind would necessarily come to a different conclusion." Va. Code Ann. § 2.2-4027; *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983); *Vasaio v. DMV*, 42 Va. App. 190, 196, 590 S.E.2d 596, 599 (2004) (quoting *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988)). With respect to findings of law "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." *Vasaio*, 42 Va. App. at 196-97 (holding that it was within the specialized competence of the DMV to determine the meaning of the term "motor vehicle" as used in Va. Code §§ 46.2-705 and 46.2-706). In such cases, "judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of delegated discretion." *Id.* When the question of law involves a statutory interpretation issue that falls outside the special competence of the agency, "little deference is required to be accorded to the agency decision" because "[p]ure statutory interpretation is the province of the judiciary." *Brandt v. Maha Lakshmi Motors, Inc.*, 48 Va. App. 493, 497, 632 S.E.2d 628, 630 (2006).

## Analysis

The Court considered arguments on four issues: first, whether the applicable evidentiary standard of proof was the standard set forth in the pre-2009 or post-2009 version of Va. Code § 46.2-1569(4); second, whether the TCSC should be classified as a "dealer" or a "franchise" under Va. Code §§ 46.2-1500 and 46.2-1569(4); third, whether the application of Va. Code §§ 46.2-1569(4) and 46.2-1573(D) requires a separate and independent "good cause" analysis; fourth, whether there was sufficient evidence in the factual record to support the Hearing Decision.

### A. *The Applicable Evidentiary Standard under Va. Code § 46.2-1564(4)*

The current language of Va. Code § 46.2-1569(4) became effective on March 23, 2009. This provision provides, in part:

> No such additional franchise may be established at the proposed site unless the Commissioner has determined, if requested by a dealer of the same line-make in the relevant market area . . . that *the franchisor can show by a preponderance of the evidence* that, after the grant of the new franchise, the relevant market area will support all of the dealers in that line-make in the relevant market area.

(Emphasis added.) Prior to the 2009 amendment, the same section stated:

> No such additional franchise may be established at the proposed site unless the Commissioner has determined, if requested by a dealer of the same line-make in the relevant market area . . . that *there is reasonable evidence* that, after the grant of the new franchise, the market will support all of the dealers in that line-make in the relevant market area.

(Emphasis added.)

The 2009 amendment significantly heightened the evidentiary standard under this provision. Whereas the prior standard required the Commissioner find that there was reasonable evidence that the RMA will support all of the relevant dealers, the current standard requires the Commissioner to find that the franchisor has demonstrated this same conclusion by a preponderance of the evidence. In his decision, the Commissioner recognized the significant difference in evidentiary standards and found that the pre-2009 version of the statute applied to this case. *See* Tab 37, Admin. R. However, in reaching his final decision, the Commissioner examined the evidence under both standards and concluded that his decision would be the same under either version. *See id.*

This Court has reviewed the language of both versions of § 46.2-1569(4), as well as the analysis of the Commissioner. The Court holds that the Commissioner's analysis was correct and that the pre-2009 version of § 46.2-1569(4) and its evidentiary standard must be applied to the facts of this case because the amendment did not specifically provide that it should be applied retroactively. *See Berner v. Mills*, 265 Va. 408, 414, 579 S.E.2d 159, 161-62 (2003). Moreover, the Court finds that it would reach the same overall determination under either version of § 46.2-1569(4).

B. *Statutory Interpretation of the Term "Franchise" under Va. Code §§ 46.2-1500 and 46.2-1569*

Virginia Code § 46.2-1500 provides distinct statutory definitions for the terms "dealer" and "franchise." A "motor vehicle dealer" or "dealer" is defined as any person who engages in the businesses of buying, selling, or exchanging new or used motor vehicles. *See* Va. Code Ann. § 46.2-1500. A "franchise" is defined as "a written contract or agreement between two or more persons whereby one person, the franchisee, is granted the right to engage in the business of offering and selling, servicing, or offering, selling, and servicing" motor vehicles of a particular line-make. *Id.*

Virginia Code § 46.2-1569(4) provides, in part:

> [I]t shall be unlawful for any manufacturer . . . [t]o grant an additional *franchise* for a particular line-make of motor vehicle in a relevant market area in which a *dealer* or *dealers* in that line-make are already located unless . . . there is reasonable evidence that, after the grant of the new *franchise*, the market will support all of the *dealers* in that line-make in the relevant market area.

(Emphasis added.) The quoted portion reflects the language of the statute before it was amended in 2009. As discussed, *supra*, the Commissioner and this Court have applied the evidentiary standard of proof from the pre-2009 version of § 46.2-1569(4); the Court now quotes this language only to address the definition of the terms "dealer" and "franchise."

Based on the statutory definitions provided in § 46.2-1500, the Commissioner found that the TCSC constituted a "franchise" rather than a "dealer." *See* Tab 37, Admin. R. Accordingly, the Commissioner reached his final decision by examining whether the RMA could support two dealers, Springfield Toyota and Page Toyota, following the grant of the additional franchise, the TCSC. *See id.*

Springfield Toyota argues that the Commissioner erred by finding that the TCSC constituted a "franchise" rather than a "dealer." According to Springfield Toyota, classifying the TCSC as a "franchise" rather than a "dealer" was contrary to the purpose and intent of the Virginia Motor Vehicle Franchise Act. Springfield Toyota argues that the TCSC should be classified as a dealer because an existing Virginia dealer will own the TCSC and the TCSC could potentially capture available sales opportunities in the RMA for the benefit of Page Toyota.

DMV and TMS argue that the Commissioner correctly concluded that the TCSC constituted a "franchise" rather than a "dealer," and further, that the plain language of Va. Code § 46.2-1500 supports the Commissioner's conclusion. According to DMV and TMS, the TCSC does not meet the statutory definition of a "dealer" because it will not engage in any sales activities at its location.

This Court holds that, as this is a matter of statutory interpretation that is within the specialized competence of DMV, the Commissioner's decision is entitled to special weight and the Commissioner correctly interpreted § 46.2-1500 in concluding that the TCSC constitutes a "franchise" rather than a "dealer." Moreover, this Court finds that the plain language of § 46.2-1500,. requires this conclusion. The General Assembly demonstrated its intent to distinguish between a "dealer" and a "franchise" by including separate definitions for the terms in § 46.2-1500, and the Court finds the inclusion of those separate definitions to be significant as evidence that the General Assembly did not intend the terms to be used interchangeably.

The distinction between a "dealer" and a "franchise" arises from the presence or absence of sales activities at a given facility. The definition of a "dealer" includes three subsections, identifying persons who are "dealers," and, in the description of each of these persons, the Code requires the person to "sell" or "offer to sell" motor vehicles. *See* Va. Code Ann. § 46.2-1500. However, the Virginia Code defines the business of a "franchise" as "offering and selling, servicing, or offering, selling, and servicing" motor vehicles. *Id.* The use of the punctuation and disjunctive "or" demonstrates that a "franchise" may be engaged in the business of "offering and selling," "servicing," or "offering, selling, and servicing." *See id.* As one of these options only requires "servicing," the definition indicates that a "franchise," as opposed to a "dealer," is not required to sell or offer to sell motor vehicles.

The TCSC will only service new and used Toyota line-make motor vehicles. Therefore, the TCSC meets the statutory definition of a "franchise" under § 46.2-1500. *Id.* The TCSC has not requested a license to sell motor vehicles and is prohibited from engaging in any sales activity at the TCSC. In fact, the Commissioner held that, "should Page Toyota engage in any sales activity at the new location, it would be doing so in violation of the Virginia Motor Vehicle Dealer Franchise law." *See* Tab 37, Admin. R. Therefore, as the TCSC is prohibited from selling motor vehicles, it does not meet the statutory definition of a "dealer." *See id.*

This Court is not persuaded by Springfield Toyota's argument that classifying the TCSC as a "franchise" rather than a "dealer" is contrary to the purpose and intent of the Virginia Motor Vehicle Franchise Act. Virginia Code § 46.2-1569(2) requires the Commissioner to consider the effect that a proposed franchise, e.g., a service center, will have on the dealers in the RMA. This inquiry would include any potential influence of the TCSC on available sales opportunities in the RMA. Therefore, it is not necessary to classify the TCSC as a dealer in order to effectuate the purpose and intent of the Act.

C. *Application of Va. Code §§ 46.2-1569(4) and 46.2-1573(D)*

Virginia Code § 46.2-1569(4) provides, in part:

> Notwithstanding the terms of any franchise agreement, it shall be unlawful for any manufacturer, factory branch, distributor, or distributor branch, or any field representative, officer, agent, or their representatives. . . .
>
> (4) To grant an additional franchise for a particular line-make of motor vehicle in a relevant market area in which a dealer or dealers in that line-make are already located unless the franchisor has first advised in writing all other dealers in the line-make in the relevant market area. No such additional

franchise may be established at the proposed site unless the Commissioner has determined, if requested by a dealer of the same line-make in the relevant market area within 30 days after receipt of the franchisor's notice of intention to establish the additional franchise, and after a hearing on the matter, that the franchisor can show . . . that there is reasonable evidence that, after the grant of the new franchise, the relevant market area will support all of the dealers in that line-make in the relevant market area.

Further, Virginia Code § 46.2-1573(D) provides, in part:

For purposes of any matter brought to the Commissioner under subdivisions 3, 4, 5, 6, and 7b of § 46.2-1569 with respect to which the Commissioner is to determine whether there is good cause for a proposed action or whether it would be unreasonable under the circumstances, the Commissioner shall consider:
1. The volume of the affected dealer's business in the relevant market area;
2. The nature and extent of the dealer's investment in its business;
3. The adequacy of the dealer's capitalization to the franchisor's standards and the adequacy of the dealer's facilities, equipment, parts, supplies, and personnel;
4. The effect of the proposed action on the community;
5. The extent and quality of the dealer's service under motor vehicle warranties;
6. The dealer's performance under the terms of its franchise;
7. Other economic and geographical factors reasonably associated with the proposed action; and
8. The recommendations, if any, from a three-member panel composed of members of the Board who are franchised dealers not of the same line-make involved in the hearing and who are appointed to the panel by the Commissioner.

Springfield Toyota argues that, in making his determination concerning the RMA, the Commissioner was required to conduct a separate and independent good cause test under § 46.2-1573(D) prior to coming to a decision under § 46.2-1569(4). Springfield Toyota asserts that under § 46.2-1573(D), the Commissioner must evaluate the performance of Springfield Toyota, the affected dealer, under the eight criteria and either find that TMS demonstrated that Springfield Toyota was performing inadequately, thereby

finding good cause for the creation of the TSCS (the proposed action), or determine that Springfield Toyota was performing adequately, thereby demonstrating that the TSCS was unreasonable under the circumstances. Springfield Toyota further alleges that, only after the Commissioner undergoes this analysis, is he able to make a separate determination under § 46.2-1569(4) based only on whether the RMA would support all of the dealers in that RMA following the establishment of the TCSC.

DMV and TMS argue that § 46.2-1573(D) does not create a separate and independent good cause test but that § 46.2-1569(4) requires the Commissioner to make only a single determination: whether the RMA will support all of the dealers in the RMA following the establishment of the proposed franchise. In making this determination, the Commissioner must consider the eight factors listed in § 46.2-1573(D). Under this interpretation, the factors under § 46.2-1573(D) are incorporated into the analysis required under § 46.2-1569(4); they do not constitute a separate and independent good cause test.

The Commissioner found that § 46.2-1573(D) does not create a separate and independent good cause test. *See* Tab 37, Admin. R. Instead, the Commissioner considered the eight factors listed in the statute when making his determination under § 46.2-1573(D). *See id.* Additionally, the Commissioner determined that, because the § 46.2-1573(D) list does not indicate it is exclusive, the Commissioner could consider any other relevant factors. *See id.* Further, the Commissioner held that the finding of "good cause" under § 46.2-1573(D) is not dependent on whether the affected dealer is a "good" or "bad" dealer. *See id.* This Court again finds that this is a matter of statutory interpretation that is within the specialized competence of the DMV, the Commissioner's decision is entitled to special weight, and holds that the Commissioner correctly applied §§ 46.2-1573(D) and 46.2-1569(4). Moreover, this Court finds that the plain language of §§ 46.2-1573(D) and 46.2-1569(4) require the same conclusion.

The Court holds that § 46.2-1573(D) does not create an additional separate and independent good cause test. The plain language of § 46.2-1573(D) provides that it is setting forth the criteria that is to be considered in making specific determinations under certain sections of Va. Code § 46.2-1569 whenever the Commissioner must determine whether there is a good cause for a proposed action or whether it would be unreasonable under the circumstances. Section 46.2-1569(4) requires the Commissioner to determine whether there is reasonable evidence that the RMA will support all of the dealers in a particular line-make in the RMA following the establishment of a proposed franchise. In contrast, under § 46.2-1569(5) the Commissioner must find "good cause" for the termination, cancellation, or nonrenewal of a franchise to uphold the proposed action. By referencing § 46.2-1569(4) in § 46.2-1573(D), the General Assembly demonstrated its intent to require the Commissioner to consider the eight factors listed in

the statute in reviewing the proposed action and does not add an additional determination that must be made. Requiring the Commissioner to treat those eight factors as a separate and distinct good cause analysis would create an additional hurdle in the establishment of a franchise that is not provided for by the plain language of §§ 46.2-1573(D) and 46.2-1569(4). If the General Assembly had intended to require the Commissioner to determine whether the franchisor had good cause for establishing the proposed franchise, the General Assembly could have charged the Commissioner with making such a determination in § 46.2-1569(4), as it did in § 46.2-1569(5).

## D. *The Sufficiency of the Evidence in the Record*

The Court has reviewed the record in this case, including the exhibits and transcripts of the hearing, specifically the testimony and reports of the two experts, Mr. Sharif Farhat and Dr. Ernest H. Manuel, Jr. The Commissioner found that "based on the statistical data . . . the relevant market area will support all Toyota dealers in Springfield's relevant market area." Tab 36, Admin. R. The Court finds that there is sufficient evidence in the record to support the Commissioner's decision and that the Petitioner has failed to show that a reasonable mind would necessarily come to a different conclusion.

## *Conclusion*

In arriving at its conclusion, the Court has reviewed the pleadings, memoranda, and arguments of counsel. First, the Court holds that the pre-2009 version of Va. Code §46.2-1569 applies to the facts of this case; however, the Court comes to the same overall conclusion under the evidentiary standard set forth in either version of this statute. On the issues of statutory interpretation, the Court finds the Commissioner's decision is entitled to "special weight," and holds that the Commissioner was correct in his analysis and interpretations of the relevant statutory provisions. Further, the plain language of the statutory provisions requires this Court to come to the same conclusions. First, the TCSC meets the statutory definition of a "franchise" under § 46.2-1500 because it will service new and used Toyota line-make vehicles. However, the TCSC does not meet the statutory definition of a "dealer" under § 46.2-1500 because it will not and cannot engage in any sales activity. Therefore, the Commissioner used the proper criteria when making his determination under § 46.2-1569(4): he sought to determine whether the RMA would support all of the dealers in the RMA, Springfield Toyota and Page Toyota, following the establishment of the proposed franchise, the TCSC.

Additionally, § 46.2-1573(D) does not create a separate and distinct good cause test. Instead, § 46.2-1573(D) provides eight factors to be considered

by the Commissioner in making his determination under § 46.2-1569(4). Therefore, the Commissioner correctly applied §§ 46.2-1569(4) and 46.2-1573(D) by considering the eight factors when reaching his conclusion that the RMA would continue to support all of the dealers in the RMA following the establishment of the TCSC.

The Commissioner correctly interpreted the controlling statutes, and there was sufficient evidence in the record to support his decision. Therefore, the Court affirms the February 28, 2011, Hearing Decision.