COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Chief Judge Decker, Judges AtLee and Malveaux
Argued at Richmond, Virginia


VIRGINIA RETIREMENT SYSTEM

                                            OPINION BY
v.      Record No. 0434-22-2      JUDGE MARY BENNETT MALVEAUX
                                         DECEMBER 6, 2022

JOAN B. SHELTON


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Brian J. Goodman, Legal Affairs & Compliance Coordinator,
Virginia Retirement System (Jason S. Miyares, Attorney General;
Charles H. Slemp, III, Chief Deputy Attorney General; Steven G.
Popps, Deputy Attorney General; Joshua N. Lief, Senior Assistant
Attorney General/Section Chief; Elizabeth B. Myers, Assistant
Attorney General, on briefs), for appellant.

Richard L. Locke (Shannon S. Otto; Locke & Otto, on brief), for
appellee.

The Virginia Retirement System ("VRS") appeals an order of the City of Richmond Circuit

Court ("circuit court") directing that VRS pay a survivor benefit to Joan B. Shelton ("Shelton") and

ordering that VRS pay her $25,000 in attorney fees. On appeal, VRS argues that the circuit court

erred in ordering VRS to pay a monthly survivor benefit to Shelton. VRS further contends that the

circuit court erred by awarding Shelton attorney fees and costs. For the following reasons, we

reverse the decision of the circuit court.

I. BACKGROUND

Shelton and Kenneth O. Shelton ("husband") were married on July 26, 1958. On

December 15, 1997, the Loudoun County Circuit Court entered a final decree of divorce between

the parties. Paragraph thirteen of the divorce decree stated that Shelton would receive fifty

percent of the marital share of husband's VRS retirement plan. That paragraph further provided that "[husband] is directed to elect a Survivor's Option naming [Shelton] as the contingent annuitant. Division shall be effectuated by the entry of a VSR [sic] Approved Domestic Relations Order."

On the same day that the divorce decree was entered, the Loudoun County Circuit Court entered an approved domestic relations order ("ADRO") in relation to the VRS retirement provisions in the divorce decree. In paragraph six, titled "Member to name spouse as contingent Annuitant," the order states that husband "shall name [Shelton] as the only contingent Annutant [sic] (i.e., Survivor Option) which shall provide a monthly payment to the former spouse for her lifetime."

The ADRO further provided, in paragraph seven, that, "[t]he Virginia Retirement System is hereby ordered to disburse to [Shelton] the portions of distributions assigned under this [o]rder if, as and when such distributions are made as provided by VRS's governing laws and rules subject to the following limitations." The limitations included that the ADRO "shall not be interpreted in any way to require VRS to provide any type of benefit or any option not otherwise provided under the plan" and "shall not be interpreted in any way to require VRS to provide increased benefits."

In addition, the ADRO stated that "[m]ember and former spouse are ordered to complete and sign all VRS forms and provide all information necessary to effectuate the provisions of this Order." The ADRO further stated that "[t]he member's eligibility to receive retirement benefits from VRS and the amount of any such benefits are governed solely by the provisions of the Virginia Retirement Code."

In a letter addressed to Shelton's divorce attorney, dated January 14, 1998, a paralegal for VRS stated that Shelton and husband's ADRO "meets VRS requirements for an Approved

Domestic Relations Order. The ADRO will become a part of [husband's] permanent VRS record." Another letter from VRS to Shelton's divorce attorney, dated November 20, 1998, informed counsel that the agency had the ADRO "on file."

Husband filed an application for service retirement with VRS on October 22, 1998. When a VRS member retires, they have several retirement benefit options. A member can select the basic benefit plan, which does not provide a survivor benefit. The member can also select from a variety of survivor benefit plans, under which VRS will continue to pay a benefit after the VRS member dies to a person the member has designated, known as the contingent annuitant. *See* Code § 51.1-165. The choices for a survivor benefit plan include a "100% Survivor Option," a "50% Survivor Option," or a "Special Survivor Option" allowing the applicant to choose a select percentage. On husband's retirement application, he selected the basic benefit plan, instead of choosing a plan with a survivor benefit option.

On January 1, 1999, husband retired. Shelton began receiving a portion of husband's retirement benefit on February 1, 1999. On April 14, 2019, husband died. Shelton received her last check from VRS on May 1, 2019. Shelton contacted VRS for an explanation as for why her payments had stopped, but failed to obtain one, so she retained counsel in the matter. Her attorney received an email from VRS indicating that husband had not designated Shelton as the contingent annuitant of a survivor option, thus her payments had ceased when husband died. VRS denied Shelton's request for continued payment of benefits.

After VRS denied her request, on January 9, 2020, Shelton asked for an informal fact-finding conference. At the informal fact-finding conference, which took place on July 22, 2020, before Michael A. Katzen, an independent fact finder, Shelton produced several documents that became a part of the agency record.

A May 1996 VRS document titled "VRS Retirement Benefits & Divorce" ("retirement guide") stated that it was a "guide . . . designed to give VRS members, their spouses, attorneys and the judiciary a thorough understanding of how VRS retirement benefits may be divided as part of an equitable distribution" and that "[i]f there are any discrepancies between this information and the law, the provisions of law will prevail." Regarding a member's designation of a plan and a contingent annuitant, the retirement guide stated, "Although the divorce decree may require the member to choose a certain option and name the former spouse as a contingent annuitant, VRS cannot force a member to select a specific option, beneficiary or contingent annuitant." The guide further explained, "If the member selects an option at retirement that does not conform to the order, or fails to name the former spouse as contingent annuitant, and VRS has a copy of the order on file, VRS will notify the parties when the retirement application is filed."[1]

A VRS document, titled "Approved Domestic Relations Order" and dated January 6, 1999, listed husband as the retiree and noted that there was a "lifetime benefit" connected to the order.

A VRS case note reflected that in April 2019 a VRS program specialist reviewed husband's VRS account and the ADRO. The program specialist noted that husband retired under the basic benefit plan, but "the ADRO that had been accepted and attached to the retiree's account stated he was to name his former spouse . . . as the only contingent annuitant (i.e.,

---

[1] The agency record also included an updated January 2016 VRS retirement guide. This document included the same notice provision as the 1996 guide, stating that "[i]f VRS has a copy of the order on file when the retirement application is filed and the member does not conform to the order, VRS will notify the parties." The updated retirement guide also provides that "[a]n ADRO may direct the member, but not VRS, to designate a former spouse as beneficiary. VRS does not enforce or otherwise monitor any beneficiary designation specified in any agreement of the parties or in the judgment, decree or order terminating the marriage." Further, "VRS does not take any responsibility for a member who may violate the terms of an ADRO."

Survivor Option)." The program specialist further noted that husband "failed to do so and as VRS was processing his retirement application it appears no one caught this fact; therefore, the member was not notified of his obligation under the court order to name her under such survivor option."

The record also included an email from VRS to Shelton's attorney after Shelton asked VRS to estimate what her payments would have been if husband had designated her as the contingent annuitant of a 100% survivor benefit option. The June 14, 2019 email stated that "[i]n this hypothetical scenario, Ms. Shelton would receive a new lifetime annuity of approximately $6,297.07 per month."

At the informal fact-finding conference, Shelton testified that she had not received notice in any form from VRS that husband had selected a retirement plan option that did not include a survivor benefit.

On September 30, 2020, Katzen issued a decision in which he found that VRS was "obligated to continue payments to Ms. Shelton in conformity with the ADRO, specifically as if [husband] had properly named her as a contingent annuitant." In making this decision, Katzen first found that husband's retirement application selection did not provide Shelton with a survivor benefit despite the ADRO requiring husband to do so. Katzen then rejected VRS's argument that it could only be required to pay retirement benefits under the actual retirement plan that the VRS member selected in his application because VRS itself "failed to follow the ADRO it approved and had on file or to notify the parties that [husband's] retirement application was inconsistent with the court's order." He also rejected VRS's argument that it was not obligated to act upon a court order to which it was not a party, instead finding that "[a] noticed non-party may be compelled to abide by a court's prescribed obligations under its order" and that "VRS, by its own admission, accepted the ADRO, made it a permanent part of [husband's] file

and [was] bound by its terms." Katzen concluded, "Allowing a state agency to operate in contravention of its published guidance to the detriment of a third party flies in the face of sound public policy and reduces that guidance to a nullity."

On November 18, 2020, VRS issued a final case decision rejecting Katzen's recommendation and instead concluding that the agency had "no statutory basis or legal authority to pay [Shelton] since [she was] neither a VRS member nor a beneficiary designated to receive VRS benefits." VRS asserted that it did "not have any obligation or authority to act upon or enforce a court order to which it [was] not a party," referencing the ADRO in this case. VRS stated that after a party to a domestic relations order submits it for VRS's review of the order's retirement provision, "VRS may acknowledge an order as feasible within VRS plan provisions and accept it as an ADRO. However, this acknowledgement is predicated on the parties to the ADRO acting in accordance with the ADRO's provisions." The agency stated that "VRS does not and cannot agree to enforce the terms of the ADRO, and all payments to a VRS member and any former spouse are dependent exclusively on the member's experience and selections within the statutory framework of VRS plan provisions." Thus, VRS concluded that because husband had chosen a retirement plan option without a survivor benefit, VRS was unable to provide a survivor benefit to Shelton as her "past payments from VRS were entirely derivative of [husband's] experience and selections within the plan." VRS advised that Shelton's "recourse" was with husband's estate.

Shelton appealed the final case decision to the circuit court, and the court heard the appeal of the case decision on November 22, 2021.

The court issued a final order on February 24, 2022. The court found that "[d]espite the specific policy mandate of VRS to notify the parties that [husband] had made an annuitant election inconsistent with the ADRO, VRS did not notify either party of the error." The court

further found that "[i]t is undisputed that [Shelton] never received any notice from VRS, either by telephone, e-mail, or letter . . . that [husband] selected a retirement benefit election inconsistent with the ADRO." The circuit court then concluded that the "ADRO is a valid Court Order, and by accepting the ADRO and making it a permanent part of [husband's] file, VRS is bound by its terms." The court determined that VRS erred by ignoring Code § 51.1-124.4's provision that circuit courts can divide VRS benefits as part of a divorce action. The court also concluded that "under . . . Code §§ 51.1-124.4 and 20-107.3, VRS is obligated to comply with a [c]ourt [o]rder. VRS does not have the discretion to ignore the statutes, nor the discretion to ignore a [c]ourt [o]rder entered pursuant to these statutes, and erred in doing so." The court also determined that VRS failed to follow its published guidelines.

The court ordered that VRS provide a monthly benefit to Shelton as if husband had selected a 100% survivor benefit option and that this monthly benefit would continue until Shelton's death. It also ordered VRS to pay Shelton's attorney fees and costs in the amount of $25,000.

VRS appealed the circuit court's final order to this Court.

## II. ANALYSIS

On appeal, VRS argues that the circuit court erred in ordering the agency to pay a monthly survivor benefit to Shelton.[2]

---

[2] VRS also contends that the circuit court misapplied the substantial evidence standard by making its own findings of fact. *See* Code § 2.2-4027 (establishing that, upon review to the circuit court, the party complaining of the agency action must demonstrate an error of law, which may include "the substantiality of the evidentiary support for findings of fact"). However, the record before us contains no argument by VRS challenging the circuit court's application of the substantial evidence standard in its final order. Therefore, we do not address this argument on appeal to this Court. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."); *see also Va. Bd. of Med. v. Fetta*, 12 Va. App. 1173, 1176 (1991) (declining to consider agency's

The General Assembly established VRS as an independent agency of the Commonwealth with the purpose of maintaining a retirement system for state employees and employees of participating political subdivisions. Code § 51.1-124.1. The Virginia Administrative Process Act ("VAPA"), Code §§ 2.2-4000 to -4031, authorizes judicial review of agency decisions. *See* Code § 2.2-4027. "In both the circuit court and this Court, appellate review of an agency action is limited to issues of law." *Gaines v. Dep't of Hous. & Cmty. Dev. State Bldg. Code Tech. Rev. Bd.*, 71 Va. App. 385, 390 (2020). These issues include

> (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact.

Code § 2.2-4027. "Under the VAPA, the governing standard of review depends on the nature of the controversy." *Citland, Ltd. v. Commonwealth ex rel. Kilgore*, 45 Va. App. 268, 274 (2005). When an appeal presents issues of fact, this Court "defer[s] to the agency just as we would a jury or a trial court." *Id.* "Similarly, when the appellant challenges a judgment call on a topic on which 'the agency has been entrusted with wide discretion by the General Assembly,' we will overturn the decision only if it can be fairly characterized as 'arbitrary or capricious' and thus a 'clear abuse of delegated discretion.'" *Id.* at 275 (quoting *Vasaio v. Dep't of Motor Vehicles*, 42 Va. App. 190, 196-97 (2004)).

However, "[a]n agency does not possess specialized competence over the interpretation of a statute merely because it addresses topics within the agency's delegable authority."

---

argument on appeal when the "issue was not raised at either the formal hearing or in the circuit court"), *aff'd*, 244 Va. 276 (1992).

*Finnerty v. Thornton Hall, Inc.*, 42 Va. App. 628, 634 (2004). "Pure statutory construction, a matter within the 'core competency of the judiciary,' requires *de novo* review." *Citland*, 45 Va. App. at 275 (quoting *Finnerty*, 42 Va. App. at 635).

It is a well-established principle that "[w]hen the language of a statute is unambiguous, [courts] are bound by the plain meaning of that language." *Transparent GMU v. George Mason Univ.*, 298 Va. 222, 237 (2019) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). Where a court must interpret a statute, the "plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." *Gaines*, 71 Va. App. at 391 (quoting *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998)).

Here, the circuit court ordered VRS to pay Shelton a survivor benefit after concluding that, pursuant to Code § 51.1-124.4 and Code § 20-107.3, VRS did not have the ability to ignore a court order, here the ADRO, entered pursuant to these statutes. On appeal, VRS argues that these statutes do not obligate VRS to provide Shelton with a survivor benefit after husband selected a retirement plan that did not include a survivor benefit. Reviewing the applicable statutes, we agree.

Code § 51.1-124.4 is contained in Title 51.1, which governs pensions, benefits, and retirement under VRS. Code § 51.1-124.4(A) states that an individual's VRS assets "shall not be subject to execution, attachment, garnishment, or any other process whatsoever."

> It is clear upon reading Code § 51.1-124.4(A) that the legislature intended VRS to hold its assets in the form of a public trust, for the sole benefit of retirees and their designated beneficiaries. It is for this reason that the legislature has shielded these funds from virtually all legal attacks, save those expressly exempted within the statute.

*Shropshire v. Virginia Ret. Sys.*, 48 Va. App. 436, 445 (2006). One such exception is that "retirement benefits and assets created under this title which are deemed to be marital property pursuant to Chapter 6 ([Code] § 20-89.1 et seq.) of Title 20 may be divided or transferred by

- 9 -

the court by direct assignment to a spouse or former spouse pursuant to [Code] § 20-107.3." Code § 51.1-124.4(A). This statute makes clear that once a VRS retirement benefit is deemed marital property by a court during a divorce proceeding, the court may divide or transfer that retirement benefit to a former spouse pursuant to Code § 20-107.3.

As a court may only divide or transfer a VRS retirement benefit pursuant to Code § 20-107.3, we next turn to that statute. Specifically concerning survivor benefits, Code § 20-107.3(G)(2) provides that a "court *may order a party* to designate a spouse or former spouse as irrevocable beneficiary during the lifetime of the beneficiary of all or a portion of any survivor benefit or annuity plan of whatsoever nature." (Emphasis added).

In contrast, Code § 20-107.3(G)(1), which concerns pension, profit-sharing, or deferred compensation plans, provides that a "court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan, or retirement benefits . . . that constitutes marital property." Further, "[t]he court *may order direct payment* of such percentage of the marital share *by direct assignment* to a party *from the employer trustee, plan administrator, or other holder of the benefits*." *Id.* (emphases added).

"[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." *Fox v. Fox*, 61 Va. App. 185, 196 (2012). In accordance with Code § 20-107.3(G)(1), a court may "order direct payment" of the marital share of a pension, profit-sharing, or deferred compensation plan by direct assignment to the former spouse from the plan administrator.[3] However, Code

---

[3] However, that subsection also contains limitations on the court's authority to direct payment—"the court shall only direct that payment be made as such benefits are payable" and "[n]o such payment shall exceed 50 percent of the marital share of the cash benefits actually received by the party against whom such award is made." Code § 20-107.3(G)(1).

- 10 -

§ 20-107.3(G)(2) only allows a court to "order a party to designate a spouse or former spouse" as their survivor benefit beneficiary. Therefore, under the statutory scheme, a court is permitted to order a third-party plan administrator to make direct payments of the marital share of a pension, profit-sharing, or deferred compensation plan to a former spouse. A court is not permitted to order a plan administrator, in this case VRS, to itself designate a member's former spouse as the beneficiary of a survivor benefit. Rather, the court's authority is limited to ordering that the VRS member designate their former spouse as their survivor benefit beneficiary.

This is exactly what the ADRO does in this case. In paragraph six, the ADRO states that husband "shall name [Shelton] as the only contingent Annutant [sic] (i.e., Survivor Option) which shall provide a monthly payment to the former spouse for her lifetime."[4] However, husband failed to designate Shelton as the beneficiary of a survivor benefit associated with his VRS account; he chose a basic benefit plan, instead of selecting a plan with a survivor benefit option. There is no evidence in the record that either husband or Shelton was notified that husband chose a retirement plan option that was inconsistent with the ADRO. VRS's failure to notify Shelton leaves her without the survivor benefit she thought she would receive under the ADRO. However, under Code § 20-107.3(G)(2), the circuit court did not have authority to order

---

[4] We note that the ADRO itself orders husband to name Shelton as "the only contingent Annutant [sic] (i.e., Survivor Option)." While this language indicates that husband was required to name Shelton as his survivor benefit beneficiary, it does not specifically include what percentage survivor benefit option he was required to choose. As noted above, husband could have selected from a variety of survivor benefit plan options with differing percentages. However, we assume without deciding that the language of the ADRO provided Shelton with a survivor benefit as if husband had selected the 100% survivor benefit option because, even assuming Shelton was awarded a full, 100% survivor benefit in the ADRO, her appeal still fails as the circuit was without authority to direct VRS to pay her a survivor benefit in such an amount.

- 11 -

VRS to pay Shelton a survivor benefit after husband, the VRS member, chose a retirement plan without that benefit.[5]

Concerning the lack of notice, Shelton asserts that the VRS committed an error of law in this case because it failed to observe required procedure in not informing the parties that husband had selected a retirement plan inconsistent with the ADRO. *See* Code § 2.2-4027 (listing "observance of required procedure where any failure therein is not mere harmless error" as an error of law under the VAPA). Shelton relies on the language in the VRS's retirement guide providing that "[i]f the member selects an option at retirement that does not conform to the order, or fails to name the former spouse as contingent annuitant, and VRS has a copy of the order on file, VRS will notify the parties when the retirement application is filed." However, the VRS retirement guide is merely a guidance document created to provide information as to how VRS retirement benefits may be divided as part of an equitable distribution. Code § 2.2-4001, the definitional statute governing the VAPA, provides that a "guidance document" has the same definition as that provided in Code § 2.2-4101, which defines a "guidance document" as "any document developed by a state agency or staff that provides information or guidance of general applicability to the staff or public to interpret or implement statutes or the agency's rules or regulations." In contrast, Code § 2.2-4001 defines a "rule" or "regulation" as "any statement of general application, having the force of law, affecting the rights or conduct of any person, adopted by an agency in accordance with the authority conferred on it by applicable basic laws."

---

[5] Indeed, if VRS paid Shelton a survivor benefit after husband's selection of a basic benefit plan, this action would contravene VRS's governing law. *See* Code § 51.1-165(A)(1) (providing that "[a] member may elect to receive an increased retirement allowance in lieu of any death benefits"). Further, Shelton would receive a survivor benefit not from husband's VRS account, but from funds belonging to other state employees. *See Shropshire*, 48 Va. App. at 447 ("[G]iven retiree's selection of payments only during his lifetime, there [were] no 'retirement funds' left after his death from which appellant could collect. Once retiree died, his retirement account ceased to exist. Instead, appellant is asking to share in the funds belonging to other state employees.").

"Not subject to the scrutiny associated with promulgated regulations, agency guidelines 'do not purport to be a substitute for the statute.'" *Davenport v. Summit Contractors, Inc.*, 45 Va. App. 526, 533 (2005) (quoting *Jackson v. W.*, 14 Va. App. 391, 399 (1992)). "Because they are designed merely to provide assistance to [agencies] in the administration of the statute, they do not have the force of law." *Jackson*, 14 Va. App. at 399. Most importantly, they cannot take precedence over the statutory authority which they are designed to implement. While VRS failed to follow its guidance document by not notifying Shelton of husband's selection of a retirement plan inconsistent with the ADRO, the remedy Shelton requests—ordering VRS to provide her a survivor benefit—would be in contravention of Code § 51.1-124.4(A) and Code § 20-107.3(G)(2). Therefore, because VRS's retirement guideline is not a formally promulgated rule or regulation and does not have the force of law, any violation of the notice provision contained in the retirement guide cannot supersede the provisions of Code § 51.1-124.4(A) and Code § 20-107.3(G)(2), which only allow for a court to order a party, not VRS, to designate a survivor beneficiary.

Attorney Fees

VRS also argues that the circuit court erred by awarding attorney fees and costs to Shelton. When a person challenges an agency action, that individual may recover reasonable attorney fees and costs from the agency if the person "substantially prevails on the merits of the case and (i) the agency's position is not substantially justified, (ii) the agency action was in violation of law, or (iii) the agency action was for an improper purpose, unless special circumstances would make an award unjust." Code § 2.2-4030. As we reverse the circuit court's award of a survivor benefit to Shelton, she has not "substantially prevail[ed]" on the merits of the case. Consequently, we vacate the circuit court's award of attorney fees and costs.

## III. CONCLUSION

In appeals under the VAPA, parties challenging agency actions must demonstrate an error of law under Code § 2.2-4027. We conclude that VRS's denial of Shelton's request for payment of a survivor benefit in its case decision was not an error of law. VRS's action complied with statutory authority, because under Code § 51.1-124.4(A) and Code § 20-107.3(G)(2), a court can order a party, but not VRS, to designate a survivor beneficiary. Further, VRS did not commit an error of law by failing to observe required procedure because its failure to provide notice to Shelton was a violation of a policy contained in a guidance document and not a violation of a rule or regulation. Accordingly, we reverse the judgment of the circuit court, vacate the circuit court's award of attorney fees and costs, and reinstate VRS's final case decision.

*Reversed.*